■ ZARA CONTRACTING CO., INC., Appellant, v. STATE OF NEW YORK, Respondent. (Claim No. 33421.) — This is an appeal from so much of the judgment as failed to award damages to the claimant for specific items alleged in the pleadings. Claimant, a contracting corporation, entered into an agreement with the State of New York, dated the 19th of March, 1954, for the reconstruction of a portion of the Conduit Boulevard, totaling 2.16 miles and located in the County of Nassau. Plans and specifications were submitted, from which bids were received, resulting in a contract in the amount of $1,703,302.42 being awarded to the claimant who now contends that it is entitled to a further sum over the contract price for additional excavation in placing fill and in "benching", topsoil, cofferdams, recleaning pavement, cleaning drainage system and for delay and interference as itemized in its claim. These items the lower court disallowed, at the same time granting additional allowances in the amount of approximately $29,000. As to the additional fill, the State contends that the contractor was bound by the maximum payment lines as shown on the plans and while conceding that additional fill was used, payment was made after an earthwork survey by the State engineers showing that materials were placed in an area outside the slope line and of no use or service in the performance of the contract. Item 2B (b) of the Specifications, "Measurement and Payment", provided in part that payment limitation of the excavation should not exceed those shown on the plans unless otherwise ordered in writing by the engineer. There is no evidence as to any directive or instructions, oral or in writing, by the engineer to substantiate in whole or in part the claim for the additional fill. "Benching" is the formation of shelves or benches on an embankment used to support the embankment when fill is being added. The witnesses for claimant admitted that it was paid for the material once but claim that because of the "benching" operations, it is entitled to payment a second time. The items contained in the exhibit [Tabulation of Benching] were based on speculation and not accurate measurements. The court found that the plans made no provision for "benching" although it was referred to in the specifications. There was no testimony that the State Engineer directed such work to be done. There was testimony that part of the work claimed was done for the convenience of the claimant. Claimant seeks additional payments for topsoil furnished and placed on the job. In arriving at the amount of the claim, it took the conceded figure of 44,426 square yards of topsoil multiplied by an average of 6½ inches in depth and arrived at 8,021 cubic yards which once again was multiplied by 1.4 compaction factor, making a total of 11,229 cubic yards of topsoil alleged to have been used on the job and, after making allowance to the State, claims there is due and owing the cost of 5,735.5 cubic yards of topsoil. This is accounted for in part by various testings made by the representatives of the claimant demonstrating a depth of 6½ inches of topsoil at the center of the mall; the claimant alleging it was placed there at the direction of the engineer to increase by one fourth of an inch the pitch at the center of the mall. There was no evidence as to the total amount of topsoil used on the mall and the balance was accounted for by use along the shoulders and fill of the road. While there is proof that more topsoil was brought to the job than paid for, such speculation

cannot be the basis for an allowance of extras. It was directed by the engineer to increase the pitch but there is no proof that this required more than the four inches mentioned in the specifications. The fact that claimant produced proof of 6½ inches of topsoil in the center of the mall does not substantiate its claim as it might have resulted from a defective subbase or placed there because it worked to the advantage of the contractor. From the testimony before us, we do not find a basis for overruling the finding of fact made by the lower court. With reference to "cofferdams", the estimate was for approximately 3,000 square feet of such dams at $3 per square foot but claimant was paid for 4,801.5 square feet. The substance of the additional claim [4,198.6] square feet is explained by examination of its Exhibit 18 which shows the alleged seven cofferdams. This demonstrates an excavation from the north to the south side of the road where ultimately a culvert was installed. This, together with the testimony and an examination of the contract on this phase of the case, leads us to conclude that the work claimed, aside from what the State recognized, properly came under Item 5S entitled "Trench, Culvert and Bridge Excavation" and for which work the claimant admits payment. We find no substance to the claim for "recleaning pavement" in the Spring of 1955. There was an item in the contract for cleaning existing drainage system in a lump sum amount of $5,000, which was paid in accordance with the terms thereof. The principal contention of the claimant is that additional work was required under this item because certain "head walls" were deleted from the contract. Claimant's witnesses testified that it was the usual and ordinary procedure in contracts of this kind that all structures must be cleaned before they are turned over to the State for acceptance. Lastly, the claimant requests damages for delays and interference which resulted in further costs for additional drainage work, paving, sidewalk work, engineering services and other additional labor costs. We are convinced from a review of the complete record that there is no merit to this part of the claim. The proposal, which was used by the contractors in making their bids, specifically provided that the construction was through a heavily travelled and main business street of several villages; that it would be necessary to have certain construction work done by the County of Nassau, by the Village of Rockville Centre, various utility concerns and others, that might interfere with and cause delay and that the contractor was to include in his price bid whatever amount might be necessary to compensate him for such inconveniences and delays. He was further advised with reference to the plans that their accuracy and completeness were not guaranteed and it was the responsibility of the contractor to establish the exact position of all work from control points shown on the map or furnished after the award or as modified by the engineer. While we have said in other cases that the wording of a contract does not bar a claim for damages against the State (*Johnson* v. *State of New York*, 5 A D 2d 919) such is not the situation herein. The completion date for the work under the terms of the contract was December 31, 1954 and the work was finished except as requested in an application for extension on December 30, 1954 to June 1, 1955 for the following reasons: "To complete planting during period March 1–May 1st; seeding March 15–May 1st and to place remainder of Bituminous Material for paths and playground areas as temperature permits in Spring." The record discloses that there were inaccuracies so far as the plans are concerned but we are unable to say that they were of such a substantial nature as to cause or constitute unjustifiable delay or interference. It was the burden of the claimant to prove his claim by fair preponderance of the evidence. The trier of the facts, as to the items here in dispute, found a failure of such proof

and we are unable to say that such finding was contrary to the weight of evidence. Judgment affirmed, with costs to the State of New York. Bergan, J. P., Gibson, Herlihy and Reynolds, JJ., concur; Foster, P. J., not voting.